IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.          ) | Criminal No. 09-305 |
| ) | |
| OMAR GADSDEN,   ) | |
| ) | |
| Defendant.   ) | |
| ) | |

## OPINION

Pending before the court is a pro se motion filed by Omar Gadsden ("Gadsden") for immediate release from the sentence of imprisonment he is currently serving at FCI-Bennettsville (ECF No. 413). Gadsden seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i), due to the COVID-19 virus. The court-appointed attorney filed a notice that no counseled filing would be forthcoming (ECF No. 416). The government filed an expedited response opposing the motion on July 1, 2020 (ECF No. 418). Gadsden's pro se motion is now ripe for disposition.

Factual Background

Gadsden is now serving concurrent terms of imprisonment imposed by this court at Crim. No. 09-305 and Crim. No. 13-65, which originated in the United States District Court for the District of New Jersey and was transferred to this court with Gadsden's consent. On November 3, 2012, Gadsden pleaded guilty to count 3 of the third superseding indictment at Crim. No. 09-305, which charged him with conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(f). As described in the presentence investigation report, Gadsden was taken into custody in November 2009 after a drive-by shooting. A search of the vehicle uncovered loaded firearms

1

and two live hand grenades (ECF No. 344).  On June 17, 2013, Gadsden pleaded guilty to count 1 at Crim. No. 13-65, which charged him with conspiracy to distribute heroin.  Gadsden was sentenced the same day to 210 months of imprisonment at Crim. No. 09-305 and 151 months at Crim. No. 13-65, to concurrently run, followed by 3 years of supervised release at each case, to concurrently run.  Gadsden's projected release date is October 1, 2024.

Legal Analysis

    1.  Exhaustion of administrative remedies

As an initial matter, the court must consider whether Gadsden's motion is ripe for consideration by the court.  In *United States v. Raia*, No. 20-1033, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.

Gadsden represents that he satisfied his administrative remedies by making a written request to the warden at FCI Bennettsville on May 14, 2020, to file a motion for compassionate release on his behalf (ECF No. 413 at 3-4).  Gadsden acknowledges that on May 18, 2020, the warden denied his request in writing (ECF No. 413 at 2).  The warden's letter provided, in relevant part: "If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response."  *Id*.  There is no evidence that Gadsden commenced an appeal of the warden's decision.  Instead, on May 26, 2020, he filed the pending motion for relief in this court.

Gadsden argues that upon the warden's denial of his request, he may file a motion for compassionate release with the court on his own behalf.  The government contends that Gadsden

failed to demonstrate that he exhausted his administrative remedies because he did not appeal the denial to the BOP Regional Director's office and Office of General Counsel pursuant to 28 C.F.R. §§ 542.15 and 571.63. The government urges that Gadsden's motion should be denied as premature.

In *Raia*, the court of appeals instructed that "strict compliance" with the exhaustion require is of critical importance during the COVID-19 pandemic. *Raia*, 954 F.3d at 597. The government is correct that Gadsden did not fully comply with the BOP's administrative remedies. Accordingly, his motion must be denied.

The First Step Act provides, in relevant part, that the court may reduce the term of imprisonment if it finds that extraordinary and compelling reasons exist, "upon motion of the defendant **after the defendant has fully exhausted all administrative rights** to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **_or_ the lapse of 30 days** from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

As explained *United States v. Early*, No. CR 19-92, 2020 WL 2572276 (W.D. Pa. May 21, 2020), courts "have interpreted the statute to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." *Id*. at *3 (collecting decisions). In other words, if the warden does not respond to the inmate's request, the inmate may file a motion with the court after 30 days have lapsed. On the other hand, if the warden does respond by denying the inmate's request, the inmate is obligated to fully exhaust all the administrative procedures before filing a motion with the court. *Id.*

In this case, it is undisputed that the warden did respond, in writing, to Gadsden. The warden's response on May 18, 2020, was four days after Gadsden presented his request on May

14, 2020.  The 30-day lapse provision in § 3582(c)(1)(A)(i), therefore, does not apply.

The warden's denial of an inmate's request for compassionate release does not fully exhaust the administrative process.  There are two additional steps that must be completed:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15(a); *see also* 28 C.F.R. § 571.63 (a denial by the General Counsel or Director, Bureau of Prisons, constitutes a final administrative decision).  Gadsden did not establish that he submitted an appeal to the regional director; submitted an appeal to the general counsel; or obtained a final administrative decision from the BOP.  Accordingly, Gadsden did not fully exhaust his administrative rights as required by § 3582(c)(1)(A)(i).

In *Raia*, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the "exhaustion requirement takes on added – and critical – importance." *Raia*, 954 F.3d at 597.  Gadsden is required to strictly comply with the BOP's administrative procedures before seeking relief from the court.  The only exception to full exhaustion, i.e., futility of the administrative process if the warden does not respond to a request within 30 days, does not apply to Gadsden.  In sum, Gadsden's motion must be denied.

2. § 3553(a) factors and extraordinary and compelling reasons

The court observes that even if Gadsden did exhaust his administrative remedies, the court would likely deny his request for release on the merits.  The government maintains that

Gadsden poses a serious danger to the community, if released, which outweighs any incremental risk of contracting COVID-19 he faces if he remains in custody. Gadsden faces a difficult burden. The court must first consider the § 3553(a) sentencing factors and Gadsden must demonstrate that "extraordinary and compelling reasons" exist. U.S.S.G. §1B1.13. Guns and drugs are bad combinations that pose serious dangers to the community and Gadsden has demonstrated a history of violence. Gadsden's original sentence was imposed after thorough consideration and the determination that the sentence was "sufficient but no greater than necessary" to satisfy the § 3553(a) factors. In addition, Gadsden's motion did not articulate "extraordinary and compelling" reasons for compassionate release, as defined in U.S.S.G. §1B1.13, Application Note 1. He does not have a terminal illness. His medical condition (umbilical hernia and diastasis recti, repaired, ECF No. 413 at 9) does not substantially diminish his ability to provide self-care within a correctional environment. At age 42, he does not qualify under the age provisions. He did not argue that his family circumstances warrant a sentence reduction. The catchall "other reasons" in subsection (D) do not justify Gadsden's release because he expresses only a generalized fear of contracting COVID-19. In *Raia*, the court of appeals cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 954 F.3d at 597. It appears that the BOP is actively monitoring and testing inmates and removing and quarantining those who show symptoms of COVID-19. In sum, on this record Gadsden's susceptibility to COVID-19 is not extraordinary and compelling.

The court recognizes the potential for Gadsden's exposure to the COVID-19 virus at FCI-Bennettsville.[1] Unfortunately, that potential exists anywhere in the community. The court is

---

[1] As of July 8, 2020, there were 3 inmates and 3 staff with active cases of COVID-19 at FCI-

sympathetic to his concerns about complications caused by COVID-19 and possible exposure to affected individuals. Speculation concerning possible future conditions, however, does not constitute a "compelling reason" for release. In other words, his current arguments for release do not outweigh the factors considered by the court in imposing his original sentence, most particularly, the danger to the community posed by his release.

Conclusion

In accordance with the foregoing, Gadsden's motion for compassionate release (ECF No. 413) will be DENIED for the failure to exhaust administrative remedies.

An appropriate order will be entered.

Dated:  July 9, 2020.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

---

Bennettsville. https://www.bop.gov/coronavirus/ (last visited July 8, 2020).