IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | Criminal No. 09-305 |
| ) | |
| OMAR GADSDEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION**

    I.     Introduction

Pending before the court is a pro se motion for reconsideration (ECF No. 422) filed by Omar Gadsden ("Gadsden"). He seeks reconsideration of the court's order of July 9, 2020 (ECF No. 420), which denied his motion for compassionate release due to the COVID-19 virus. A response from the government is not necessary.

    II.    Background

Gadsden is now serving concurrent terms of imprisonment imposed by this court at: (1) Crim. No. 09-305; and (2) Crim. No. 13-65, which originated in the United States District Court for the District of New Jersey and was transferred to this court with Gadsden's consent. On November 3, 2012, Gadsden pleaded guilty to count 3 of the third superseding indictment at Crim. No. 09-305, which charged him with conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(f). As described in the presentence investigation report, Gadsden was taken into custody in November 2009 after a drive-by shooting. A search of the vehicle uncovered loaded firearms and two live hand grenades (ECF No. 344). On June 17, 2013, Gadsden pleaded guilty to count 1 at Crim. No. 13-65, which charged him with conspiracy to distribute heroin. Gadsden was sentenced the same day to 210 months of imprisonment at Crim. No. 09-305 and

151 months at Crim. No. 13-65, to concurrently run, followed by 3 years of supervised release at each case, to concurrently run.

Gadsden is located at FCI-Bennettsville, in South Carolina, and his projected release date is October 1, 2024. On May 14, 2020, Gadsden made his initial request for compassionate release to the warden at FCI Bennettsville (ECF No. 413 at 3-4). Four days later, on May 18, 2020, the warden denied his request in writing (ECF No. 413 at 2). The same day (i.e., less than 30 days after his initial request to the warden), Gadsden sought compassionate release in this court (ECF No. 413).[1] The government filed an expedited response opposing the motion on both procedural and substantive grounds (ECF No. 418).

In the opinion which accompanied the July 9, 2020 order, the court explained that the motion must be denied because Gadsden failed to exhaust his administrative remedies pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i). The court also noted that even if Gadsden's motion was ripe, it would have been denied on substantive grounds because Gadsden did not articulate any extraordinary and compelling reasons for compassionate release (ECF No. 420).

Gadsden's motion for reconsideration challenges the court's conclusion about exhaustion. Gadsden does not, however, address the alternative basis for the court's decision and does not articulate any extraordinary and compelling reasons for compassionate release.

III.    Standard for Reconsideration

A motion for reconsideration should be granted only where the moving party establishes one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a

---

[1] Gadsden signed the motion on May 18, 2020, although it was not docketed until May 26, 2020.

clear error of law or fact to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). As recently explained in *FirstBank Puerto Rico v. Misite*, No. CV 17-09, 2019 WL 3843056, (D.V.I. Aug. 15, 2019): "[M]otions [for reconsideration] are not substitutes for appeals, and are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Id*. at *3 (citations omitted).

    IV.    Discussion

        A.  Whether *United States v. Harris* or *United States v. Raia* is applicable

The court's July 9, 2020 opinion and order relied on *United States v. Raia,* 954 F.3d 594 (3d Cir. 2020). Gadsden seeks reconsideration based on the recent decision of the United States Court of Appeals for the Third Circuit in *United States v. Harris*, No. 20-1723, -- F.3d --, 2020 WL 5198870 (3d Cir. July 20, 2020). On August 31, 2020, the court of appeals designated *Harri*s as a "Precedential Per Curiam Opinion." [https://ca3-ecf.sso.dcn/cmecf/jsp/CaseSummary.jsp?caseNum=20-1723&incOrigDkt=Y&incDktEntries=Y](https://ca3-ecf.sso.dcn/cmecf/jsp/CaseSummary.jsp?caseNum=20-1723&incOrigDkt=Y&incDktEntries=Y) (last visited September 4, 2020). Gadsden points to *Harris* as an intervening change of controlling law. The court acknowledges that *Harris* is precedential and would be binding if the facts of this case fall within its scope. In order to determine whether reconsideration is appropriate, this court must determine whether on the facts of this case *Harris* is the controlling law.

            1.  The *Raia* decision

In *Raia*, the inmate reported to prison on March 3, 2020 and made his request to the warden for compassionate release "shortly thereafter." 954 F.3d at 596. Before the Bureau of Prisons ("BOP") responded, and before 30 days passed, the inmate filed a compassionate release

motion with the court. *Id*. The district court noted that it would have granted the motion and released Raia to home confinement. The district court denied the motion, however, because it concluded that the government's appeal of the underlying sentence divested it of jurisdiction. *Id*.

The court of appeals upheld the denial of the compassionate release motion on other grounds, because it found that the inmate did not exhaust his administrative remedies. The court explained that the BOP was not given 30 days to consider Raia's request and there was no adverse decision by the BOP for Raia to administratively exhaust. *Id*. at 597. The court noted the BOP's statutory role and its extensive and professional efforts to curtail the COVID-19 pandemic. The court emphasized the importance of complying with the BOP's administrative procedures: "Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*

The court of appeals' decision in *Raia* was issued approximately 30 days after the defendant's initial request to the warden. *Id*. at 596. The court of appeals rejected the defendant's request to remand his compassionate release motion to the district court. Instead, the court rejected this request "outright" and described the defendant's failure to exhaust administrative remedies as a "glaring roadblock" making remand to the district court futile. *Id.* at 597. It is difficult to reconcile the refusal to remand in *Raia* with *Harris'* interpretation of the "30-day lapse" clause, under which an inmate has an unqualified right to seek relief in court after 30 days. 2020 WL 5198870 at *1.

### 2. The *Harris* decision

In *Harris*, there had been lengthy administrative consideration of the inmate's requests for release based on his medical condition. As set forth in the district court's December 20, 2019

4

order in *Harris*:

> Defendant submitted his initial request for compassionate release to the warden at FCI McKean, where he was then imprisoned, on or about January 20, 2014, fairly shortly after having been diagnosed with Becker's Muscular Dystrophy. That request was denied by the warden on March 31, 2015, and Defendant appealed to the Regional Director. After this appeal was denied, Defendant appealed to the Office of General Counsel. The request was finally administratively denied on March 16, 2016, and Defendant Harris was subsequently transferred to FCI-II Butner. On August 24, 2018, Defendant filed a new compassionate release request, which was denied by the warden at FCI-II Butner on September 18, 2018. Defendant filed a request for administrative remedy with the warden, which was denied on November 30, 2018, and then filed an administrative remedy with the BOP's Regional Director. However, on or about February 26, 2019, before receiving a decision from the Regional Director, Defendant Harris filed a habeas petition with this Court requesting that the Court take action pursuant to Section 3582(c)(1)(A). Indeed, the petition itself acknowledges that there had been "[n]o result yet" on this appeal. (Doc. No. 75 at 3).

(Crim. No. 10-80, ECF No. 80 at 3).

The February 26, 2019 habeas petition filed with the district court was recharacterized as a motion for compassionate release. *Harris*, 2020 WL 5198870 at *1. At that time, Harris' appeal to the BOP regional director had been pending for approximately 3 months.[2] Before the district court, the government argued, and the court agreed, that because the warden responded within 30 days, the inmate was required to completely exhaust the BOP's administrative remedy process.[3] *Id*.

On appeal, the government reversed its position taken before the district court and conceded that Harris exhausted his administrative remedies. The government asked the court of appeals to

---

[2] Pursuant to 28 C.F.R. § 542.18, the regional director's failure to respond within 30 days (i.e., by December 30, 2018) entitled Harris to consider the absence of a response as a denial at that level.

[3] After Harris filed his petition with the court, on or about March 16, 2019, the Regional Director responded to Defendant's appeal, noting that his medical records indicated that his condition had changed since his initial request and instructing him to re-submit a request based on this change. (Crim. No. 10-80, ECF No. 80 at 3).

remand the matter for further proceedings on the merits of the motion.[4]  *Id*.  The court of appeals accepted the government's concession of exhaustion. The appellate opinion in *Harris* is one page.  The court concluded, without extensive analysis, that "the statute states that the defendant may file the [compassionate release] motion [in court] thirty days after the warden receives his request."[5]  *Id*.  In essence, the *Harris* court interpreted the "full exhaustion" clause and "30-day lapse" clause as independent avenues for seeking relief in court, whichever is earlier.  *Id.*  In other words, if a motion for relief is filed in court 30 days after the warden receives an inmate's request for compassionate release, the court may entertain the motion.

### 3.  Conflicts between *Raia* and *Harris*

The court in *Harris* did not overrule *Raia*, which is also precedential.  In the event of conflict, it is the older decision (*Raia*) that controls.  *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008) (discussing Third Circuit Court of Appeals' IOP 9.1).  *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc*., 490 U.S. 477, 484 (1989) ("If a precedent of [a higher court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the lower court] should follow the case which directly controls, leaving to [the higher court] the prerogative of overruling its own decisions.").

---

[4] The government in its appellate brief in *Harris* cited an unidentified "position of the Department of Justice."  2020 WL 3100502 at 5.  In another case, the court asked the prosecution to provide any formal written position taken by the government about the exhaustion requirements.  The government responded by referring this court to its appellate brief in *Harris*.  *See United States v. Grasha*, Crim. No. 18-325, ECF Nos. 66, 67.  This court is unaware of any analysis supporting the government's statement in *Harris* that the DOJ corrected its position regarding exhaustion.  The government in its appellate brief also did not address the statutory interpretation issues concerning the different meanings for the word "lapse" and the conflict between the "full exhaustion" and "30-day lapse" clauses.

[5] The government's concession of exhaustion is not determinative and cannot confer authority on the court.  *United States v. Grasha*, No. CR 18-325, 2020 WL 4583874, at *1 (W.D. Pa. Aug. 10, 2020) (citing *Ross v. Blake*, ⸺ U.S. ⸺, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016) (statutory mandatory exhaustion language means a court may not excuse a failure to exhaust, even to take special circumstances into account).

The court of appeals in *Harris* did not discuss the split of authority among courts around the country and within this district about the proper statutory interpretation of the exhaustion requirements. *Compare Grasha*, 2020 WL 4583874, *and United States v. Early*, No. CR 19-92, 2020 WL 2572276 (W.D. Pa. May 21, 2020), *with United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585 at *4 (W.D. Pa. May 29, 2020). The decision in *Harris* did not comment on the lack of plain meaning of the word "lapse"[6] or address the conflict between its interpretation of the "30-day lapse" clause and the first clause of that section, which requires that defendants "**fully** exhaust[ ] **all** administrative rights." 18 U.S.C. § 3582(c)(1)(A)(i)[7] (emphasis added).[8]

*Harris* cited *Raia* for the proposition that a defendant must "at least" ask the BOP to file a compassionate release motion and give the BOP 30 days to respond. *Harris*, 2020 WL 5198870 at *1 (citing *Raia*, 954 F.3d at 595). The court of appeals in *Harris* did not address the import of the phrase "at least" and concluded that an inmate **only** needs to file a request with the warden and to wait 30 days to file a motion with the district court. *Harris* also did not address the explanation in *Raia* about the critical role of the BOP. As noted above, it is difficult to reconcile the refusal to remand in *Raia* with *Harris'* interpretation of the "30-day lapse" clause. If an inmate under *Harris* has an unqualified right to approach the court 30 days after his initial request to the warden, why was Raia (whom the district court indicated it would release) not

---

[6] *See United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264 * 3 (D. Ariz. Nov. 8, 2019).

[7] The First Step Act provides, in relevant part, that the court may reduce the term of imprisonment of a defendant if it finds that extraordinary and compelling reasons exist, "upon motion of the defendant **after the defendant has fully exhausted all administrative rights** to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf ***or** the **lapse of 30 days from the receipt of such a request by the warden of the defendant's facility**, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

[8] *See United States v. Ng Lap Seng*, No. S5 15-CR-706, 2020 WL 2301202, at *6-7 (S.D.N.Y. May 8, 2020).

entitled to relief on remand when more than 30 days had passed after his initial request to the warden?

### B. Whether the court should reconsider its July 9, 2020 order

#### 1. Administrative exhaustion

Gadsden made his initial request for compassionate release to the warden at FCI Bennettsville on May 14, 2020. The warden denied his request in writing 4 days later and Gadsden filed his compassionate release motion with the court the same day (i.e., 4 days after his initial request to the warden). Gadsden argues that upon the warden's denial, he may immediately file a motion for compassionate release with the court on his own behalf.

This fact situation is not directly controlled by *Raia* or *Harris*. In *Raia*, there was no decision from the warden prior to the filing in the district court. In *Harris*, the inmate waited far more than 30 days after his initial request to the warden before filing his motion with the court.

Under the language of the statute, the warden's denial, by itself, does not trigger either clause of the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). Gadsden did not satisfy the "full exhaustion" provision because he did not administratively exhaust his rights by appealing the warden's denial to the BOP Regional Director's office and Office of General Counsel pursuant to 28 C.F.R. §§ 542.15 and 571.63. Gadsden did not satisfy the "30-day lapse" provision, as interpreted in *Harris*, because he did not wait 30 days from the warden's receipt of his request before filing with the court. In other words, he did not file a motion for compassionate release "after . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A)(i); *see Raia*, 954 F.3d at 597 (remand to the district court is futile because "BOP has not had thirty days to consider Raia's request"). Neither clause of the statute as applied in *Harris* authorizes a defendant to seek relief in court in less than 30 days if

the warden denies his request. To hold otherwise would be inconsistent with *Raia*.

Gadsden did not satisfy either of the statutory exhaustion remedies. He did not fully exhaust his BOP administrative rights and he did not wait for 30 days after the warden received his initial request. Accordingly, his motion for reconsideration must be denied.

This result reflects that further guidance is needed. If, like here, the warden denies the request within 4 days, why would a defendant have to wait the full 30 days when he already knows that the warden has denied it? Why would the BOP undertake full administrative review (which, based on the deadlines set forth in 28 C.F.R. § 542.18, would take more than 30 days)[9] if an inmate has an unrestricted right to seek relief in court after 30 days? What policy would favor that outcome?

2. § 3553(a) factors and extraordinary and compelling reasons

The motion for reconsideration will be denied for an independent reason. As the court explained in its July 9, 2020 opinion, even if Gadsden did exhaust his administrative remedies, his request for release would be denied on the merits. The court adheres to this determination. As the court stated:

> Guns and drugs are bad combinations that pose serious dangers to the community and Gadsden has demonstrated a history of violence. Gadsden's original sentence was imposed after thorough consideration and the determination that the sentence was "sufficient but no greater than necessary" to satisfy the § 3553(a) factors. In addition, Gadsden's motion did not articulate "extraordinary and compelling" reasons for compassionate release, as defined in U.S.S.G. §1B1.13, Application Note 1. He does not have a terminal illness. His medical condition (umbilical hernia and diastasis recti, repaired, ECF No. 413 at 9) does not substantially diminish his ability to provide self-care within a correctional environment. At age 42, he does not qualify under the age provisions. He did not argue that his family

---

[9] The BOP has a 3-level review process. Pursuant to 28 C.F.R. § 542.18, a response must be made by the warden within 20 calendar days; by the regional director within 30 calendar days; and by the general counsel within 40 calendar days. That time may be extended once at each level (by 20, 30 and 20 days, respectively). A failure to respond within those times may be deemed a denial at the relevant level.

> circumstances warrant a sentence reduction. The catchall "other reasons" in subsection (D) do not justify Gadsden's release because he expresses only a generalized fear of contracting COVID-19. In *Raia*, the court of appeals cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 954 F.3d at 597. It appears that the BOP is actively monitoring and testing inmates and removing and quarantining those who show symptoms of COVID-19. In sum, on this record Gadsden's susceptibility to COVID-19 is not extraordinary and compelling.

(ECF No. 420 at 5). Of particular concern to the court is that Gadsden poses a risk of danger to the community, as evidenced by his conviction for conspiracy to retaliate against a witness. *Id*. at 1. Gadsden did not respond to or seek reconsideration of these portions of the court's analysis.

The court recognizes the increased potential for Gadsden's exposure to the COVID-19 virus at FCI-Bennettsville. As of September 4, 2020, there were 69 inmates and 12 staff members with active cases of COVID-19 at FCI-Bennettsville and visitation at the facility is indefinitely suspended. https://www.bop.gov/coronavirus/ (last visited September 4, 2020). The court adheres to its conclusion, however, that Gadsden's current arguments for release do not outweigh the factors considered by the court in imposing his original sentence, most particularly, the danger to the community posed by his release.

V.     Conclusion

In accordance with the foregoing discussion, Gadsden's motion for reconsideration (ECF No. 422) will be GRANTED IN PART in that the court has considered the effects of the *Harris* decision; and DENIED in all other respects.  The court adheres to its determinations that Gadsden failed to exhaust his administrative remedies and that he did not meet his burden to demonstrate extraordinary and compelling reasons for compassionate release.

An appropriate order will be entered.


Dated:  September 9, 2020.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge